IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OUSMANE CAMARA,<br>　　　　Petitioner | : | No. 3:26cv292 |
| | : | |
| | : | (Judge Munley) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| CRAIG LOWE, in his official capacity | : | |
| as Warden, Pike County Correctional | : | |
| Facility; KRISTI NOEM, in her | : | |
| official capacity as Secretary, U.S. | : | |
| Department of Homeland Security; | : | |
| U.S. DEPARTMENT OF HOMELAND | : | |
| SECURITY; and PAMELA BONDI, | : | |
| U.S. Attorney General, | : | |
| 　　　　Respondents | : | |

## MEMORANDUM ORDER

Before the court is Ousmane Camara's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. The petition asserts that Camara has been misclassified under 8 U.S.C. § 1225(b)(2)(A), that his due process rights have been violated, and that he is entitled to immediate release. After reviewing Camara's circumstances on an individual basis, the court will reach the same result as it has on several prior occasions with other petitioners.[1]

---

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Camara filed the instant petition while he was detained within the jurisdiction of this court, and he is still currently in ICE custody within this court's jurisdiction. Petitioner asserts that his continued detention violates his right to due process.

Petitioner left the Islamic Republic of Mauritania in June 2023 for the United States.[2] He was a farmer in a small village with his family. During the dry seasons he went to the capital city, Nouakchott, to find work. He worked many jobs. In 2022, while in Nouakchott, a friend helped him to get a job as a security agent at a hotel. While working security at a private event, the event was interrupted by the police, who took all partygoers into custody, including security staff. The police accused them all of homosexuality. For a two-hour shift, Camara spent three days at a police station where he was brutally beaten.

In Mauritania, homosexuality is a capital offense. The Mauritanian government believes that Camara is homosexual. Camara asserts that the accusation is false. According to Camara, that fact no longer matters based on the beliefs and norms in his home country.

Eventually, a relative paid off the jailers and petitioner was released from the Nouakchott prison, but it was on conditions that he had to check in with police every two weeks. Camara returned to his village. He subsequently experienced issues with a white Arab neighbor—a Beidane—who accused the petitioner of

---

He also asserts that the wrong provision of the INA is being used to justify his potentially indefinite detention. Thus, the court has habeas jurisdiction over Camara's petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

[2] These facts are derived from Camara's petition, (Doc. 1), his application for asylum and withholding of removal, (Doc. 1-2), and from the administrative records provided by the respondents in opposition to the petition, (Docs. 4-1 to 4-8).

2

killing his camel, also untrue. Camara believes his neighbors can now murder him with impunity based on such false accusations.

These events caused Camara to leave his village and his family behind. He flew to Turkey to Colombia to El Salvador and then to Nicaragua. He travelled by bus from Nicaragua through Honduras and Guatemala before reaching Mexico. Once inside Mexico, men that looked like police officers boarded the bus and demanded to be paid; otherwise, Camara believes he would have been killed. Consequently, it appears that petitioner entered the United States by paying human traffickers.

On June 18, 2023, United States Border Patrol encountered Camara near the border town of Lukeville, Arizona. He spent approximately 45 days in custody at that time. On August 1, 2023, Immigration and Customs Enforcement ("ICE") released the petitioner on his own recognizance through a grant of parole. Camara made his way to New York and then to Philadelphia. On March 29, 2024, United States Customs and Immigration Services accepted the petitioner's application for asylum and withholding of removal. Camara obtained employment at a McDonalds inside a Walmart in the Philadelphia area. He was also working as a food delivery driver through DoorDash.

During a routine check-in in August 2025, ICE agents re-detained Camara. He was charged with being present in the United States without admission or

3

parole under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) and for not being in possession of a valid entry document at the time of his application for admission under INA § 212(a)(7)(A)(i)(I).[3] United States Citizenship and Immigration Services ("USCIS") administratively closed his asylum application for lack of jurisdiction because, as of now, his fear claim must be decided by an immigration judge ("IJ"). Consequently, Camara has been in immigration detention at the Pike County Correctional Facility ("PCCF"), a county jail, for just over six months.[4]

In the United States of America, the root principle of the writ of habeas corpus—the Great Writ—"is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." Fay v. Noia, 372 U.S. 391, 402, (1963).

Camara's detention is the product of a revised policy under which individuals present in the United States without admission are treated as applicants for admission subject to mandatory detention under 8 U.S.C. §

---

[3] See 8 U.S.C. § 1182(a)(6)(A)(i), (a)(7)(A)(i)(I).

[4] An IJ denied Camara's request for a bond hearing, citing Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 228 (BIA 2025) and Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025). (Doc. 4-7). Although Camara has appealed that determination to the Board of Immigration Appeals, ("BIA"), that appeal appears to be futile based on Hurtado. (Doc. 4, Resp. at 13).

4

1225(b)(2)(A) rather than discretionary detention under § 1226(a). Because Camara is detained under 8 U.S.C. § 1225(b)(2)(A), according to the respondents, he is ineligible for a bond hearing.

This case, like many others before it, turns on whether 8 U.S.C. § 1225(b)(2)(A) or § 1226(a) applies to the petitioner. There is no decision of the Supreme Court or the Third Circuit Court of Appeals to guide the analysis.[5] Most district court decisions to address the issue hold that individuals like Camara are not subject to mandatory detention under Section 1225(b)(2)(A), including by the jurists in the Middle District of Pennsylvania.[6] The issues have been approached from just about every angle possible. Most reach the same conclusion, and the undersigned will not deviate from that majority view. Camara's detention under that statute violates the INA and due process. Therefore, the petition for a writ of habeas corpus will be granted. Camara will be ordered released.

Briefly, Section 1225(b)(2)(A) provides: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an

---

[5] A split panel of the Fifth Circuit Court of Appeals agrees with the respondents' view of Section 1225. See Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026). The dissenting opinion is more persuasive. Id. at 508–21 (Douglas, J.).

[6] See Meeran v. Rose, No. 3:26CV187, 2026 WL 540379, at *2 n.3 (M.D. Pa. Feb. 26, 2026) (collecting cases); Chaudhari v. Rose, No. 3:26-CV-242, 2026 WL 540378, at *4 n.4 (M.D. Pa. Feb. 26, 2026) (collecting cases).

alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A).   Individuals detained under Section 1225 are not entitled to a bond hearing. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018) (Alito, J., plurality op.) ("And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

"Applicant for Admission" — Section 1225(a)(1) provides that "[a]n alien present in the United States who has not been admitted (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).  Definitionally, all unadmitted persons, including Camara, are "applicants for admission."

"Alien Seeking Admission" – Unlike "applicant for admission," the phrase "alien seeking admission" is not defined in Section 1225.  Under the view adopted by the government every "applicant for admission" is an "alien seeking admission." This would subject all unadmitted aliens to mandatory detention without bond whether they are located at the border or have spent months or years living in the interior.  Under that reading, "for purposes of immigration

6

detention, the border is now everywhere." Buenrostro-Mendez, 166 F.4th at 520 (Douglas, J., dissenting op.).

In contrast, the consensus district court view is that the phrase "alien seeking admission" does independent work and requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry[,]" Quispe v. Rose, No. 3:25-CV-2276, --- F. Supp. 3d ----, 2025 WL 3537279, at *5 (M.D. Pa. Dec. 10, 2025) (Mehalchick, J.) (citations omitted), and does not apply to "noncitizens like [p]etitioner who have resided in the United States for years[,]" Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865 at *5 (Mariani, J.) (citations omitted).

As these district court cases and the Buenrostro-Mendez dissent have recognized, to adopt the government's position would, *inter alia*, negate the plain meaning of the text, ignore context and history, violate the rule against surplusage, and render the mandatory detention of "criminal aliens" under Section 1226(c) (as expanded last year by the Laken Riley Act) as arising from a redundant statutory provision. See Patel, 2025 WL 3516865 at *5 (citing Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia, No. CV 25-6312, 2025 WL 3294726, at *6 (E.D. Pa. Nov. 25, 2025) (Rufe, J.)); Buenrostro-Mendez, 166 F.4th at 509–16 (Douglas, J., dissenting op.).

7

Here, Camara was residing in the United States for approximately two years when he was re-arrested and re-detained. Consequently, a reading of Section 1225(b)(2)(A) against petitioner's circumstances reflects that this statute does not apply to him. "[T]he difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law." Castanon-Nava v. U.S. Dep't of Homeland Sec., 161 F.4th 1048, 1061 (7th Cir. 2025).

At this point, Camara's detention would be governed by Section 1226(a). Jennings, 583 U.S. at 288 (Alito, J., plurality op.). Section 1226(a) "sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" Id. (quoting 8 U.S.C. § 1226(a)). Pending such decision, the Attorney General may: 1) "continue to detain the arrested alien"; and 2) "may release the alien on…bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or…conditional parole[.]" 8 U.S.C. § 1226(a)(1)–(2); see also 8 C.F.R. §§ 1003.19, 1236.1(c)(8), 1236.1(d)(1). "At a bond hearing, a noncitizen 'may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community.'" Quispe, 2025 WL 3537279, at *6 (quoting Nielsen v. Preap, 586 U.S. 392, 397–98 (2019)).

8

Camara, however, will be released.  He enjoys the protections of the Due Process Clause of the Fifth Amendment.  Trump v. J. G. G., 604 U.S. 670, 673 (2025).  Whether Camara's continued detention under 8 U.S.C. § 1225(b)(2)(A) violates procedural due process requires a consideration of: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Each factor favors Camara.  First, his private interest is the interest in not being physically detained by the government, which "is the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004).  "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.) (citation omitted).  Second, he has been detained erroneously under Section 1225(b) without any apparent procedural safeguards, including the ability to obtain a bond hearing. See id. ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely.");

see also Patel, 2025 WL 3516865, at *6 (citing Bethancourt Soto v. Soto, No. 25-CV-16200, --- F. Supp. 3d ----, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025); Quispe, 2025 WL 3537279, at *7 (citations omitted). Third, the government's interest in detaining noncitizens "to ensure the appearance of aliens at future immigration proceedings and to prevent danger to the community" is important, but there is no indication that Camara is a convicted criminal or engaged in any criminal activity. See Quispe, 2025 WL 3537279, at *7. In response to the petition, the government has not provided any information suggesting that Camara is a danger to the community or a flight risk. Upon entry to this country, the government released the petitioner on his own recognizance. That will happen again today.

Habeas courts "have the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted." Boumediene v. Bush, 553 U.S. 723, 779 (2008). Camara's continued detention without bond under Section 1225(b)(2)(A) violates his due process rights. Therefore, respondents shall immediately release Camara from their custody because he was unlawfully detained without the opportunity for a bond hearing.[7]

---

[7] To the extent that Craig Lowe, Warden of Pike CCF is the only proper respondent in this matter, Lowe is acting as an agent of ICE and the government will be bound by the order. See Vadel v. Lowe, No. 3:25-CV-02452, 2025 WL 3772059, at *1 n.1 (M.D. Pa. Dec. 31, 2025).

See Kashranov v. Jamison, No. 2:25-CV-05555-JDW, 2025 WL 3188399, at *8 (E.D. Pa. Nov. 14, 2025) (Wolson, J).

Furthermore, the respondents, including DHS and ICE will be permanently enjoined from re-detaining Camara under 8 U.S.C. § 1225(b)(2)(A). Id. Respondents will be temporarily enjoined from re-arresting Camara for a period of 14 days to ensure that this habeas remedy is effective. Id. Respondents, including ICE, may not impose any other restrictions on Camara's release, including any form of body-worn electronic monitoring. Camara may move to reopen this matter if the government later seeks to detain him under Section 1226(a) and fails to schedule a timely bond hearing.[8]

Accordingly, on this ____5th____ day of March 2026, it is hereby **ORDERED** that:

1) Ousmane Camara's petition for writ of habeas corpus, (Doc. 1), is

   **GRANTED**;

---

[8] Camara request for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 is not yet ripe for disposition. The Third Circuit recently confirmed that a habeas proceeding challenging immigration detention under 28 U.S.C. § 2241 is a "civil action" for purposes of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), and that the EAJA "unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. § 2241." Michelin v. Warden Moshannon Valley Corr. Ctr., No. 24-2990, 2026 WL 263483, at *1–2, *10 (3d Cir. Feb. 2, 2026). Camara will thus be permitted to file a motion for costs and fees pursuant to the EAJA within 30 days of the entry of judgment. 28 U.S.C. § 2412(d)(1)(B); Villa Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *7 (M.D. Pa. Feb. 13, 2026) (Wilson, J.).

11

2) Respondents shall **immediately** release Camara from their custody;

3) Within 48 hours, respondents shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Camara has been released;

4) Respondents shall release Camara under the same conditions that existed prior to his detention, including, release: (1) within the Commonwealth of Pennsylvania; (2) without the imposition of additional conditions (such as ankle monitors or electronic tracking devices); (3) with all clothing and outerwear worn at the time of the detention or other appropriate attire; and (4) with all personal property, including, but not limited to, any driver's license, passport, immigration documents, currency, or cell phone that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by respondents or by any contracted or affiliated facility;

5) Respondents are permanently enjoined from re-detaining Camara under 8 U.S.C. § 1225(b)(2)(A);

6) Respondents are temporarily enjoined from re-arresting Camara for a period of 14 days to ensure that this habeas remedy is effective;

7) Should respondents detain Camara pursuant to 8 U.S.C. § 1226(a), petitioner may move to reopen this matter if the government fails to

schedule a timely bond hearing in which an IJ assesses whether he poses a flight risk or a danger to the community;

8) Camara may file a motion for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 within thirty (30) days of the date of this order; and

9) The Clerk of Court is directed to close this case.

BY THE COURT:

**JUDGE JULIA K. MUNLEY**
**United States District Court**

13